Case number 224056, Christina Littler v. The Ohio Association of Public School Employees. Oral argument not to exceed 15 minutes per side. Mr. Mitchell, you may proceed for the appellant. Thank you, your honors. May it please the court, Jonathan Mitchell, on behalf of appellant Christina Littler, we'd like to reserve five minutes for rebuttal. The district court dismissed Ms. Littler's section 1983 claim against her former union because it held that the union was not acting under color of state law when it directed her public employer to divert wages from Ms. Littler's paycheck and into the union's coffers, and did so pursuant to a collective bargaining agreement between the school district and the union. Can I ask you just a foundational question? I'm confused. What is the First Amendment claim right now? In other words, and I understand that we remanded the last time, but there was a claim about Janice, there was a claim about making the choice a non-choice between being a member and not a member, and then Janice comes and we have all that. But now, are we just talking about whether she withdrew validly from the union? Yes. And if that's true, is that a First Amendment claim, or is that just a claim about whether there was a breach of contract, essentially, or whether she can withdraw? Why is it not just a state claim at this point? It's both, Your Honor. But I just want to clarify, that issue is not before this Court today, and the district court did not reach this question. But to answer Your Honor's question, what's left of our First Amendment claim The issue not before the Court is whether she validly withdrew. I don't believe it is before the Court. I don't believe it is, Judge Riedler. I don't disagree. I just want to clarify which issue. Yeah, that's right, because the district court never got around to reaching this question of whether Ms. Littler properly withdrew, because the district court held regardless there was no action under color of state law. Why is, why, just, what is the first, what would the state actor be doing? How would the state actor be denying a constitutional right here? It would be a violation of Janus, because Ms. Littler quit the union after Janus came out. The union continued to tap her paycheck, even though she was no longer a member. But don't we run into this question, and I know Bennett talked about it in some of the other cases, the difference between Janus too, I guess. Do, you know, union dues versus agency fees. She's not subject to agency fees, obviously, because she's not a non-member. She's a member, so she's subject to the dues. So then we're just talking about whether she's a union member or not, right? After she said, you know, I'm out. Yeah, it's slightly more nuanced than that, because she signed this maintenance of dues agreement before Janus. So what this agreement says is you still have to pay us dues, even if you quit, unless you quit during this 10-day window that comes around once per year. Now, she did send an email withdrawing her membership during the 10-day window. Where we disagree with the union is whether she properly executed that under the terms of the maintenance of dues agreement. So it says it has to be executed. And the union's saying that required her to produce a wet signature. Our position is it was enough for her to type her name at the end of the email. Again, none of that's before the court. I know. But to get back to your honors, yes. But I just wanted to clarify, your honors asking how does this implicate the First Amendment. It implicates Janus because if she's no longer a member, right, then the union can't touch her paycheck. Whether you call it agency fees, whether you call it membership dues, no matter what, if they're taking her wages after she quit her membership, that's a violation of Janus. But where we disagree with the union, again, this is not before the court right now, but where we disagree is whether she actually did validly resign her membership given the terms of this contract, which the court has already held to be a legally binding agreement. And in the Bennett case itself, there wasn't any question that, or nobody, the court didn't discuss whether there was a state actor or not. It just reached the question, I take it. Well, it's been different the way courts have handled this. So Hochman and Belgau, which are the relevant cases that have been cited in the union's brief and that were cited in the district court opinion, involved similar types of contractual arrangements. But the key difference in those cases was the courts in both Hochman and Belgau assumed the validity of the binding contractual obligation. And we agree with the union and the district court on this much. If Ms. Littler validly waived her First Amendment rights under Janus, and if the school district is doing nothing more than enforcing the terms of a private agreement that waived a constitutional right, obviously there's no violation of the First Amendment. You are allowed to waive constitutional rights. Just like in plea bargaining, you can waive your rights under Janus as well. But when it comes to the question of state action, when it comes to whether there was an action under color of state law, the key question before this court is whether there was action taken by the state employer at the union's behest to divert Ms. Littler's wages. Whether that actually violated the Constitution is a question for me. Is that right? There's an Ohio law that requires this provision be included in the CBA about the deduction of dues by the district? I'm not sure. I don't know whether that is a requirement of state law about whether you have to have payroll deductions or not. But regardless, I don't think that makes a difference. Well, you're not challenging the basis for the deduction, which I thought came from a state law or state requirement that these agreements include that provision. We're not saying that that provision is per se invalid or unlawful. Right. And so there's a lot of these cases where a party acts pursuant to a state mandate or state requirement and we say, okay, that might be state action. Right. But this feels very much like the other category of cases, which is there's a private actor who's misusing the process, wrongfully denying your client the ability to withdraw. Right. And that's a different category. It is a different category, Your Honor, because in the situation that you described, the state law is commanding the private party to do something or authorizing the private party to do something. In the first example. Right, pursuant to a state. In the second example cases, the cases seem to suggest it's not state action. I don't see a difference, though, because here there is a formal difference in the sense that it's the union having the state do its bidding. Right. The union is enlisting the state to carry out its desired action because the union enters into a collective bargaining agreement with the state, with the state employer, and the bargaining agreement puts the state under a contractual obligation to tap the paycheck of its employees when the union requests for it to do so. But that still constitutes joint action or joint activity, whether we use the test. Well, we're getting to joint activity, but that's the second part of the test. It is. There's state policy. I'm still focused on the first part of the test. Well, the state policy comes from the agreement, the collective bargaining agreement between the employer, the state employer, and the union. It's not taken in the form of a statute. But you're not challenging the ability of the district generally to – there's something illegal about the setup of a district withdrawing dues when a member – when an employee is also a union member. We're not in any way suggesting that's unlawful or unconstitutional. Right. And so a lot of the cases will challenge that threshold point that the state policy or the activity is illegal. Right. Perhaps a good analogy would be facial and as applied – I realize this is not a statute, but we're not suggesting in any way that the provision in the collective bargaining agreement is unconstitutional on its face simply because it's telling the state employer to divert the wages of its employees from the union. So are you really just arguing that the union breached the contract by not honoring her request to withdraw? The union does not purport to be deducting agency fees. That's right. The union was saying these are your dues, you're a member, and you did not properly withdraw, and so we're still deducting your dues. So how is that anything more than a breach of contract? Because in this situation, Judge White, the breach of the contractual agreement also implicates the First Amendment rights under Janus because Ms. Littler has a constitutional right not to have her paycheck touched or affected by the union if she's no longer a member. Yes, but that – the Janus right has to do with forced contribution for representation that you didn't request. That's not what's involved here. This isn't a forced agency fee. This is a dispute about whether she withdrew. Right, Your Honor, but if she withdrew from the union, and I understand there's disagreement between the parties over whether she properly withdrew, but if we're correct in saying that she properly withdrew and the union failed to honor her resignation, then the union is violating her rights under Janus because now she's no longer a member, and the union can't take her wages, regardless of whether it's called an agency fee or a membership due that was being collected pursuant to a misinterpretation of a contractual obligation. However, it's characterized. Once Ms. Littler quits the union, the union cannot touch her paycheck unless she clearly and affirmatively consents. So you're saying it's an independent injury? It's the same $100, right? Once I withdraw, you can't take the $100 that you were taking out, right? Right. The $100 is damage to me of $100. It's also an independent First Amendment violation because it's going to fund stuff that I don't like. That's right. Okay. I wouldn't say because it's going to fund stuff that you don't like, but it's because it's going to a public sector union that under Janus is no longer allowed to engage in payroll deductions absent clear and affirmative consent once you have someone who's quit their union membership. Yeah, but that's like number one. That's like you took the $100, and I don't want you to take the $100. I'm talking about a First Amendment injury, right? Right. So there's the tort of conversion, which would be a state law claim. I think it's Your Honor suggesting why is this just not merely a state law issue, either conversion, breach of contract, however you want to characterize it. When it comes to public sector unions, though, there's a set of constitutional doctrines that govern whether and to what extent a public employer can cooperate with a public sector union in diverting the wages of either members or non-members pursuant to a collective bargaining agreement. And again, the sole issue before this Court today is the issue of whether the union acted under color of state law. It may very well be on remand that the district court will find that we haven't carried our burden to show a constitutional violation. And then maybe we'll be before this Court again. But the only issue before this Court on appeal today is whether the union acted under color of state law. And I guess I'm just having trouble with that question. So the district has a very passive role. I mean, they're just a pass-through. They're just collecting the monies because they're the ones who make the payment to the employee in the first place. It's the union's conduct that you're challenging. The district hasn't required her to be a member of the union. The district's not on the hook for any purportedly violations of the First Amendment. It's the union. So it's the union's conduct you're challenging. I'm just having a really hard time attributing that to the state. There's no way the union can collect the money unless the state cooperates. The union cannot carry out payroll deductions by itself. It needs the state's cooperation. There's no way it can get to Ms. Littler's wages unless the state decides to withhold that and transfer that money to the union. And not only did the state do this, they did so pursuant to an affirmative agreement they had with the union, memorialized in a collective bargaining agreement that specifically says that the school district's under a contractual obligation. You're not challenging that policy.  I think Judge Wheeler-Howard characterized this. We are bringing an as-applied challenge to this regime in a way. There's nothing wrong per se with having a payroll deduction. The as-applied turns on the conduct of the actor here as the union. It's a facial challenge I get that sounds more like state action, but in your example of as-applied, as-applied feels like it then turns on what's the actual conduct at issue, and I would still relate that back to the union's conduct. It's both the union and the school district, right, because she sends the email to both. Is this case distinguishable from Judge Colleton's opinion in the Eighth Circuit? It is, and here's why. Judge Colleton's opinion in Hokeman does not reach the question of whether a collective bargaining agreement, a provision in the collective bargaining agreement that requires the state employer to divert wages constitutes state action under Section 1983, and in addition, the Eighth Circuit opinion assumes that the wages were being taken pursuant to a valid contractual waiver of the plaintiff's Janus rights. So again, if Ms. Littler validly waived her rights, and we don't think she did, but if the court on remand were to conclude that, we admit that we would lose under Section 1983. That's Hokeman, that's Belgau, that's just basic principles of contract law, the same reason a criminal defendant can waive his rights in a plea bargaining agreement, right? So what we're trying to say here is it's a very limited argument we're making on appeal. A union and a state employer are acting under color of state law when the union is enlisting the state employer to carry out its desired action, and that arrangement is memorialized formally in a collective bargaining agreement that requires the state to divert wages at the union's request. Can I ask you one other question for you? So I've been really focused on Step 1, what I view as Step 1. If we get to Step 2, what is your different categories of conduct that might satisfy Step 2? Is this a nexus case? Is this whether it's a joint action test and there's a nexus or symbiotic relationship test? Are you saying this is more one than the other? Which is your best argument? They meet both, Ron. I realize the case is, if you look at the Supreme Court case law, there's Lugar, which focuses on this idea of state action. The Sixth Circuit has different tests, but I think they all get to the same ultimate question, right? Is this conduct fairly attributable to the state? That's the overarching question that's asked in Lugar. I just think that's also the question that's asked in all these different Sixth Circuit opinions that are out there on the question. However it's characterized, we think it's satisfied. It's a symbiotic relationship because it requires the action of both the public employer to divert the wages and the union to collect those diverted wages. And then also there's contractual agreement between the two. Both of them agreed to do this. It takes two essentially to tango in this type of situation. There's no way to have payroll deductions without the cooperation of the state employer. That makes it symbiotic by definition. And the final point, just in response to your honest question, it's hard for us to see how this is any different from an arrangement where a public employer agrees to divert agency fees at the request of the union. And we know that qualifies as state action under Section 1983 because every one of the Janus-related cases has treated that as action under color of state law and allows the union to pass it. It may have been state law in some situations, but even if it were done simply pursuant to a collective bargaining agreement, that should not change the outcome. It was in Janus, that's right. But it doesn't seem to us how the analysis should be any different if it's done pursuant to a collective bargaining agreement because either way that meets state policy. It's the state agreeing with the union in a formal agreement to carry out certain... I guess I thought in the Janus cases, the state was mandating union membership, essentially. It was mandating the collection... Now we're post-Janus, so we're past that. And the union's not arguing that they're mandated to be a member. Right. So in Janus itself, there was a state law mandating this agency fee regime. But it's still state action if the mandate comes from a collective bargaining agreement that the state enters into with the union. Either way, you have state action. I mean, if the state did something in a collective bargaining... There's no other basis for it. That's the difference between the dues cases and the agency cases, that the deduction was pursuant to this state law that permitted it, and there was no contractual basis for it. That's true, Your Honor. In other cases, the deduction is based on a contract. Right, but the question under Section 1983, it's not just state law. It's under color of state law or usage or custom or policy. It's a very capacious definition, list of items in Section 1983 that can trigger potential liability. And again, to emphasize, this does not mean Ms. Littler's entitled to judgment. She's still going to have to show on remand that her Janus rights were violated by what the union did or by what the state employer did. The only question before this Court is whether this was an action taken under color of state law for purposes of Section 1983. I say I'm willing to my rebuttal time, so unless the Court has further questions, I'd like to reserve whatever is left. You'll have your full rebuttal. Thank you.  Thank you, Your Honors. Good afternoon, and may it please the Court. I'm Jacob Karabell. I represent the FLE-Ohio Association of Public School Employees, known as OPSI. Well, there were several different claims originally pressed in this case. All that is left for the purposes of this appeal, following this Court's initial opinion, is plaintiff's claim that she validly withdrew her due seduction authorization in August of 2018, and that because OPSI did not immediately honor her withdrawal, OPSI violated the plaintiff's First Amendment rights. And there's no disagreement, and my friend on the other side said this again today, that if it's correct that Ms. Littler did validly withdraw her due seduction authorization, that conduct by the union violated state law. We think if that were the case, it would have violated the Ohio Public Sector Bargaining Act. Potentially it could have violated other tort or contract provisions, but no dispute, that would be a state law problem. In these circumstances where a private party, a claim is premised on a private party violating state law, there's simply no state action, and the District Court was... Especially the threshold question, maybe not quite as positive, but why is it so hard to get out of this contract? You only give one week of the year, or 10 days of the year, are the only times you can get out of the contract. You have to give notice to the school district and to the union, and you have to do it in writing, and you won't accept an email. Why would the contract make it so hard for a union member to withdraw? A couple of points on that, Judge Radler. So there's a 10-day window in this contract that's common in union membership agreements. So it's common. So why do all unions make it so hard for union members to withdraw? Well, these types of agreements with limited revocability are common outside of the union context, and the Ninth Circuit decision, and the fiscal... I don't know. Most groups I'm a part of, if I want to quit, I just give notice, and it's done. There's not just a 10-day. If I want to leave this job, there's not just 10 days of the year I can leave this job. So unions... I'm just curious why it's so hard. You make it very difficult for people to withdraw. I'm just curious why. Well, I mean, the union could require, as do many membership organizations, sort of an upfront annual payment. They don't do that. They instead say, look, we'll allow you to have these biweekly or monthly dues deductions, but if you do that, you can only withdraw once per year. So it's effectively an annual dues payment, and if the employee leaves their job, the payments stop, and then they're only on the hook for four or five months or whatever the period is. A couple other points I just want to make about this specific card here. The 10-day window was at the beginning of the school year. This is a bargaining unit of school employees, and that's why Ms. Littler acknowledged that she hit the window because it was the first day of school and she had decided after Janice that she didn't want to be part of the union anymore. When Ms. Littler sent her email, and there's no dispute about this in the record, a field representative from OPC made several phone calls to her during the 10-day window trying to get her to say, look, your withdrawals are deficient because there's no handwritten signature. She then wrote an email saying, please stop calling me, and never perfected the withdrawal. And she's a school bus driver. Huh? School bus driver. She's not a lawyer. Anyhow, I was just curious about that. It's an odd part of the record in my mind. And these window periods, again, in the private sector, if you go back to the 1947 labor law that was passed, they've been blessed going back well. So it's not an unusual provision. But on the state action point here, the Supreme Court's decision in the Lugar case really is the touchstone. And there are two prongs in this discussion of this. In Mr. Mitchell's time, the government policy prong, which I think of as prong one, and the state actor prong, which I think of as prong two. And in Lugar itself, the Supreme Court sort of noted there that it was essential in how to resolve the case exactly what the plaintiff was challenging. And there was some ambiguity. Do you think your case is stronger on prong one or prong two? We think this is a very easy prong one case. We think it clearly falls under the misuse branch of Lugar. And there was a count in Lugar itself where the plaintiff argued that there was a First Amendment violation because the defendant had misused the Virginia prejudgment attachment procedures. And the Supreme Court said, well, that flunks prong one. The facial challenge to the attachment procedures, that can survive prong one, then you go to prong two. What about Janus and Janus II? I mean, all of those cases find state action. I take it they're simply acting pursuant to the state law or policy. It's not a misuse case. Is that what it boils down to? Correct, Judge Ombandian. So under Illinois law, which was the state law that was at issue in Janus, Illinois law expressly authorized agency fees and specifically authorized the deduction of those fees from nonmembers without their consent. So by the union there entering into a collective bargaining agreement providing for the collection of agency fees, there was express compliance with state law. It turned out that that state law violated the First Amendment, of course. But here, Ohio law, you know, no one's disputing that it no longer authorizes agency fees post Janus. It's undisputed. The union stopped collecting agency fees post Janus. So all the cases, Bennett, Belgao, the base circuit case, all of them, do they all fall on this line? The Janus one, the agency fees, if it's that, if it's state law, state action, if it's the union dues, contract, whatever it is, they're not finding state action. I mean, do they all fall in that way? I would say so, Judge Jampanian. Those cases, so Janus 2, obviously, was continuation of Janus and involved agency fees. All the rest of those cases are membership dues cases where you have a question about the validity of due seduction authorization, like in this case. And I think those cases sort of fall into two categories. One, like Belgao and Bennett, are cases where there's no dispute about compliance. In terms of the membership agreement, the question is, under Janus, do you need some kind of heightened waiver requirement? Do you need, like, a heightened waiver requirement to be satisfied in order for membership dues to be deducted pursuant to that sort of agreement? The other category of cases... Well, Judge, I guess I'll go back to my other point. Bennett doesn't really talk about state action. In theory, it should have gone away on state action grounds, shouldn't it have? Having argued Bennett, we did make that argument. The court didn't reach that and instead decided it on the merits. But Bennett was not strictly a misuse case, I would say, because there was no dispute that the plaintiff complied. The union accepted the withdrawal immediately and the question was just, under Janus, could a due seduction authorization be enforced under its plain terms? In cases like Hoekman, the 8th Circuit case that Judge Colleton decided... There's a 9th Circuit case we cited in our brief, Wright v. SEIU, where the allegation was that the union mishandled a drop request. Wright was actually a forgery case, the 9th Circuit case. There was a claim that the union forged a... There were two 9th Circuit cases, right, that came out at the same time, basically? So there's the Belgao case... No, no, Wright and the other one. Oh, Zielinski. Is that the one you're thinking of? The same day?  Right. I know that Wright was the published decision on the forgery. That was the forgery case? Yes. And that was a case where the 9th Circuit held that there was no state action. They held it both prong one and prong two. On prong one, the court said it fell right under Lugar's misuse prong because the conduct alleged there, a forgery, was antithetical to being authorized under state law or policy because it was an express violation of state law. Of course, here there's no allegation of forgery, but we think the same principle would apply because, again, if the union mishandled Ms. Littler's drop request, that would have violated, certainly, the Ohio Bargaining Act and potentially other state laws as well, whether tort claims or contract claims. And I do think Mr. Mitchell is just wrong that Hochman is distinguishable from this case, and I specifically would want to draw the court's attention to one of the Hochman plaintiffs. That was Mr. Pekarsky. There were different plaintiffs discussed in that case. Mr. Pekarsky tried to withdraw his due seduction authorization. The union there told him, you need to provide a signed agreement. There was a dispute about that. And as to that plaintiff specifically, the court held the decision, whether or not the union was correct that a signed policy was required, that's the union's decision alone and cannot be attributed to the state. And we think that's on all fours with this case and that this panel would be creating a square circuit split if it were to go the other way on these facts here. Can I ask you guys, your friend on the other side, where does this requirement come from that the district withdraw the dues? Is that a state statute or a state regulation? There's a provision of the Ohio Bargaining Act. It's section 4117.09 that requires there to be provisions in collective bargaining agreements that where an employee has authorized dues, the public employer has to deduct them. But again, that's contingent on there being a valid authorization. There's certainly no provision of Ohio law that regardless of whether a member has authorized dues or not, dues would still need to be deducted. There'd obviously be a Janus problem with that. So back to Lugar, so that prejudgment attachment, so I'm not exactly sure how it's effectuated. If you just file something with the court or if it's like filing a lien, but that strikes me as not requiring any state participation really. Here you have the whole scheme falls apart if the state, meaning the school district, doesn't deduct the monies from the union. So is this case distinguishable from that one on that basis? So in Lugar, my understanding of the Virginia procedures there was that a creditor could apply for this sort of prejudgment writ. They then take it to the sheriff. The sheriff had no choice but to execute on the writ. There it sees Lugar's property. Lugar claimed that that was a procedural due process violation and was correct about that. Certainly on prong two, Lugar has arguably some similarity to this case, but the Supreme Court was very clear in Lugar. I don't know if you're going to make the prejudgment attach. I was kind of thinking prong one more. I'm sorry. I do have a question on prong two, so go ahead if you want to finish. Yeah, and on prong one in Lugar, again, the Supreme Court was very clear that they said it's essential to determine whether there's state action to look to what exactly the cause of action is. The court held that as to the cause of action challenge, essentially the facial challenge to the Virginia procedures, their prong one was satisfied. As to the claim that the creditor had misused those procedures, prong one was not satisfied. You'd have to go bring a state law claim. So you'd equate the sheriff having to collect or enforce to the school district having to withdraw the monies, but this is all instigated by improper action by the private party.  They're the creditor. Here are the union. Yes. Again, assuming as we are for this purpose that the union acted improperly, it would be no different from the creditor acting improperly for that sort of count two of Lugar. For prong two on the joint action test, do you think we're limited to only applying that test in prejudgment attachment cases or can it be applied more broadly? On joint action specifically, I think that the precedent of this court is clear that that's limited to prejudgment attachment. That was what this court held in the Rivas versus Meldrum case, and that was directly followed from a footnote in Lugar, footnote 21, talking about joint action where the court said this is limited to the specific context of prejudgment attachment. In a case with different facts, can you say this rule could never apply in another factual situation? In Rivas, this court, and again, that was a post-judgment attachment case, but again, not all that different factually, and the court held that Lugar is specifically limited to this context of prejudgment attachment on the joint action point and just sort of, you know, point to there. So, you know, again, you know, in a different world, you might think that the decision should be read more broadly or fairly, but again, that's what this court has held in Rivas. It follows from what the Supreme Court itself said in Lugar, and so our view is that this court is bound by that, holding on joint action specifically. Certainly, plaintiff has argued that sort of more generally the symbiotic relationship or nexus test is satisfied here, and we think that that really does not survive the Supreme Court's decision in Blum v. Uretsky, where the court held that where the state simply has a ministerial role in acquiescing to a private party's decision, that there's no state action under prong two of the Lugar test, and this court has followed that in cases like Lansing and Wiltshire, so we think that this would fall under the ministerial line of cases for prong two as well. I see my time is winding down here. If there are no further questions, we would ask the court to affirm the judgment below. Thank you. Thank you, counsel. Rebuttal. Thank you, Your Honors. On the issue of Hokeman and the Eighth Circuit, Mr. Carabello is right to point out that there are some similarities between the claims of Mr. Pekarsky and the claims that Ms. Lidler is advancing here, but there are two crucially important differences in the way that the Eighth Circuit resolved those claims. Number one, the Eighth Circuit never addresses the issue of whether a collective bargaining agreement provision that requires a state employer to divert wages at the request of the union constitutes state action under Section 1983. Number two, the Eighth Circuit assumes throughout its discussion that the union was enforcing the terms of the contract properly when it diverted the wages of Mr. Pekarsky and Ms. Burroughs. That issue is still in dispute between the parties here. Now, to be clear, we don't think Hokeman was right to reject the finding of state action. In our view, there is state action whenever a public employer diverts the wages of one of its employees into the coffers of a private union, even if it's a public sector union, at the request of that union. But the Court does not need to reject the holding of Hokeman to rule our way, and there's no need to create a circuit split in order to rule in our favor. We would... I'm sorry, whenever a public employer diverts with a CBA requirement? Yes. Are you talking about any time a public employer does some ministerial act at the behest of the union? We wouldn't quite go that far, Judge Nelbandian, because all the Court needs to do to resolve this case in our favor is to say that state action exists when the public employer is being asked by the union to divert wages and the request and the arrangement is memorialized in the collective bargaining agreement. We believe the existence of the collective bargaining agreement satisfies the state policy requirement of Lugar. And then the joint action, the diversion of wages that the public employer takes at the request of the union provides the joint action. And again, Littler never addresses the question of whether a collective bargaining agreement satisfies the state policy prong of Lugar. Now again, we would welcome a ruling from this Court that is more critical of Hokeman, but we don't think the Court needs to go that far, and generally it's better to avoid creating a circuit split. Do you... Do you agree with this, or do you acknowledge this dichotomy in the cases between agency fees and dues, and then just distinguish the cases, or are you relying on cases that found state action in the dues context? We're not relying on cases that have found state action in the dues context yet, Judge White, because I don't believe there has been such a case at the appellate court level yet. So what we're relying on is the test established in Lugar, and we're applying that two-part test here. And again, we know that other courts have rejected the idea of state action, but it's always been, certainly in Belgao and Hokeman, it's always been on the premise... That the deduction was proper under the context. Yes, that's exactly right. Now, again, we admit we will lose if the union can show that the deduction was proper under the contract, but that is still a point in dispute, and that's what makes this case different from the cases that reached the Ninth Circuit in Belgao and from the case that reached the Eighth Circuit in Hokeman. The parties are still contesting this question. So for this court to say there's no state action would actually go beyond what the Ninth Circuit held in Belgao and beyond what the Eighth Circuit held in Hokeman, because it would say, essentially, there never can be state action, even if the union is improperly interpreting the contract that purports to authorize the continued deduction of union dues. That would be... I'm just curious. How did it come about that the district court decided it on this basis rather than the basis on which we remanded? I don't know, Your Honor. We had argued the other issues before the district court and the district court chose to decide it on that issue that it did. I think that made the district court opinion more vulnerable on appeal. I think this was one of the weaker arguments that the union had before the district court. But we did not have a hearing, so we didn't really discuss the issues with the district court herself and I'm not exactly sure why the court went in this particular direction. My guess would be the district court might have thought it would have been more difficult to reach some of those other questions and was trying to avoid them.  I see I only have a little bit of time left. I'm happy to answer any other questions. Otherwise, we would respectfully ask the court to reverse and remand for further proceedings. Thank you, Counsel. Thank you, Your Honors. Thank you, Counsel, for your briefs and arguments and the case will be submitted.